UNITED STATES of America, Plaintiff,

v.

Larry Wu-Tai CHIN, Defendant.

Crim. A. No. 85–00268–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

April 24, 1986.

Joseph J. Aronica, Asst. U.S. Atty., W. Gary Kohlman, Kohlman & Fitch, Washington, D.C., for U.S.

John C. Lenahan, Fairfax, Va., Jacob A. Stein, Stein, Mitchell & Mezines, Washington, D.C., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

This matter comes before the Court on counsel for defendant's motion to abate the criminal proceedings in this case *ab initio,* to vacate the conviction and dismiss the indictment pursuant to Rule 42(b) of the Federal Rules of Appellate Procedure. The matter has been briefed and is now ripe for disposition.

## BACKGROUND

After four (4) days of trial before a jury, Larry Wu-Tai Chin ("Chin") was found guilty of 17 separate criminal charges, including but not limited to (1) conspiracy to commit espionage in violation of 18 U.S.C. § 794(c), (2) passing classified information to a foreign government in violation of 50 U.S.C. § 783(b), and failure to report income earned from a foreign bank account in violation of 26 U.S.C. § 7206(1). Before Chin's sentencing, before judgment had been entered, and before an appeal of right had been filed with The United States Court of Appeals for the Fourth Circuit, Chin committed suicide. Acting on the news of Chin's suicide, the Court on February 28, 1986, entered an order directing that the case be placed among ended causes. Ten days after the Court's February 28 Order, Chin's attorney filed this motion to abate the criminal proceedings.

## MERITS

The facts of this case present a novel issue to the court: whether the suicide of a criminal defendant subsequent to his conviction by a jury, yet before judgment has been entered, before a sentence has been imposed, and before an appeal of right has been filed, require an abatement of his criminal conviction?

In *Durham v. United States,* 401 U.S. 481, 91 S.Ct. 858, 28 L.Ed.2d 200 (1971), the Supreme Court was faced with a somewhat, though not precisely analogous issue involving a defendant, convicted of the possession of a counterfeit $20 bill, who died while his petition for a writ of certiorari was pending. The Court held that "death pending direct review of a criminal conviction abates not only the appeal but also all proceedings had in the prosecution from its inception." The Court drew no distinction between death pending appeal and death pending certiorari, holding that "the distinction between the two would not seem to be important for present purposes." *Durham, supra* at 483, 91 S.Ct. at 860.

*Durham,* however, has been overruled to the extent it is inconsistent with the ruling in *Dove v. United States,* 423 U.S. 325, 96 S.Ct. 579, 46 L.Ed.2d 531 (1976) (per curiam). In *Dove,* the Supreme Court was once again faced with a case in which a defendant died while his petition for writ of certiorari was pending review. Unlike *Durham,* the Court did not abate the criminal proceedings from their inception, but instead dismissed the petition for certiorari. Although *Dove* is an extremely short *per curiam* ruling, it does represent that the Supreme Court did not consider death pending review of a writ of certiorari sufficient justification to warrant the abatement of a defendant's conviction. *Dove,* therefore, is controlling law on the issue of death pending the review of a writ of certiorari to the U.S. Supreme Court.

However, as movants have noted, many Circuit Court of Appeals have adopted *Durham*'s holding for support when a criminal defendant dies pending the review of an appeal to the circuit court. Those cases hold that the defendant's death abates not only the appeal but also all proceedings in the criminal prosecution.[1]

---

**1.** *See United States v. Dudley,* 739 F.2d 175, 176 (4th Cir.1984) *citing Durham v. United States,*

The Seventh Circuit provided the following reason for the differing treatment according death pending an appeal of right and death pending a petition for certiorari:

> The Supreme Court may dismiss the petition without prejudicing the rights of a deceased petitioner, for he has already had the benefit of the appellate review of his conviction to which he was entitled of right. In contrast, when an appeal has been taken from a criminal conviction to the court of appeals and death has deprived the accused of his right to our decision, the interests of justice ordinarily require that he not stand convicted without resolution of the merits of his appeal, which is an "integral part of [our] system for finally adjudicating [his] guilt or innocence."

*citing Griffin v. Illinois,* 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956). Those state courts considering the effect of *Durham* have all, but one,[2] agreed that abatement *ab initio* is the appropriate rule for appeals of right.[3]

*Durham* and *Dove* are of little guidance to this Court in deciding the instant case. Unlike *Durham* and *Dove* and their progeny, Chin had not, at the time of his suicide, filed an appeal. This fact renders the instant case one which requires a more probative analysis than that afforded in *Durham* and *Dove*.

Movants cite *United States v. Oberlin,* 718 F.2d 894 (9th Cir.1983) for support in the instant case, however, this Court respectfully declines to follow it. Additionally, an argument can be made that it is distinguishable from the instant case.

In *Oberlin,* the defendant was convicted and sentenced, yet before judgment was entered and a notice of appeal filed, the defendant committed suicide. Two days after the defendant killed himself the court entered judgment and defendant's counsel, one day later, filed a purported notice of appeal on behalf of the defendant. The Court of Appeals for the Ninth Circuit held that

> Here, Oberlin died before judgment was entered and before the purported notice of appeal was filed. Therefore, he did not die pending appeal. Nonetheless, at the time of his death, Oberlin possessed an appeal of right from his conviction. We conclude that, although Oberlin did not die pending appeal, the effect of his death is the same—the prosecution abates *ab initio*. *We see no reason to treat a criminal defendant who dies before judgment is entered any differently from one who dies after a notice of appeal has been filed.* In either case, he is denied the resolution of the merits of the case on appeal. (emphasis added)

*Oberlin, supra* at 896.

The language of the aforementioned passage relating to the merits of the instant case is the following: "we see no reason to treat a criminal defendant who dies before judgment is entered any differently from one who dies after a notice of appeal has been filed." *Oberlin, supra* at 896. However, as the Government notes, "[t]he Ninth Circuit's view is unsupported by any analysis," and most importantly to this Court is that it does not address whether the court assigned any weight to the fact that Oberlin's attorney did, despite Oberlin's suicide, file a notice of appeal. There is nothing in the record of the instant case that would lead to a conclusion that counsel for Chin had either been requested or authorized to note an appeal. Indeed, the

---

401 U.S. 481, 483, 91 S.Ct. 858, 860, 28 L.Ed.2d 200(1971) (*per curiam* ); *United States v. Bechtel,* 547 F.2d 1379 (9th Cir.1977); *see also United States v. Pauline,* 625 F.2d 684, 685 (5th Cir. 1980); *United States v. Moehlenkamp,* 557 F.2d 126, 128 (7th Cir.1977); *Crooker v. United States,* 325 F.2d 318, 320 (8th Cir.1963).

**2.** *Harvey v. United States,* 385 A.2d 36 (D.C.Ct. App.1978).

**3.** *State v. Griffin,* 121 Ariz. 538, 592 P.2d 372 (1979); *State v. Gomes,* 57 Haw. 271, 554 P.2d 235 (1976); *People v. Mazzone,* 74 Ill.2d 44, 23 Ill.Dec. 76, 383 N.E.2d 947 (1978); *State v. Holbrook,* 261 N.W.2d 480 (Iowa 1978); *State v. Macklin,* 560 S.W.2d 69 (Mo.App.1977); *People v. Cona,* 60 App.Div.2d 318, 401 N.Y.S.2d 239 (1978); *State v. Blake,* 53 Ohio App.2d 101, 371 N.E.2d 843 (1977); *State v. Clark,* 260 N.W.2d 370 (S.D.1977).

record justifies a conclusion that Mr. Chin did not intend to appeal.

■ The *Oberlin* court may not have found the time of a defendant's suicide relevant in determining whether a criminal proceeding should be abated. However, upon careful analysis of *Durham* and its progeny this Court cannot help but conclude that a criminal proceeding will not be abated if the Court finds that the criminal defendant did not intend to file an appeal. In the past, the courts have not directly addressed the importance of determining whether the defendant intended to file an appeal: in those cases intent was not an issue to resolve. For example, the cases citing *Durham* for support represent criminal defendants who have already filed their appeals. Thus, the resolution of whether the defendant intended to file an appeal would have been a nonsequitur. Another example is the *Oberlin* case. In *Oberlin,* the criminal defendant committed suicide prior to filing an appeal, but his attorney filed an appeal on his behalf after judgment was entered. Once again, whether the defendant intended to file an appeal was not at issue since the defendant's counsel had already filed an appeal on his client's behalf.

In the instant case there are three (3) factors uncontested by the defense which, if considered together, convince the court that Chin did not intend to file an appeal. Without such an intent the Court has no alternative but to deny the instant motion to vacate the criminal conviction and dismiss the indictment.

In support of the Government's motion in opposition to the abatement, it has sub-mitted a letter written by Chin to his wife approximately two weeks after his conviction. The letter expressed unequivocally that Chin had decided "not to appeal" and that his decision had made him feel "extremely tranquil." *See* Chin's letter (translated version). The Government argues that this letter is authoritative in that it expressly states that Chin did not want to appeal. Although the Court does not find the letter authoritative, it is helpful in that it represents to the Court that Chin, prior to his suicide, had consulted with his attorneys and decided that the appeal procedure would be agonizing and probably fruitless.

■ The Court also finds it important that Chin's death was suicidal and not due to natural or accidental causes. Although the Court is cognizant that in *Oberlin* the court held that suicide would not be considered the "ultimate waiver," of a defendant's constitutional rights, *Oberlin, supra* at 896, this Court must respectfully disagree with *Oberlin* to the extent that it does not find a legal distinction to be drawn between a criminal defendant who commits suicide and one who dies of a natural cause. Chin's suicide indicates to this Court that he chose to take his life instead of pursuing the appeals procedure which he knew [4] would have been available to him. It seems contrary to our system of justice to allow, as defense counsel has asked, Chin to be absolved of all criminal liability because he intentionally took his own life at a time when he had not been afforded a right to appeal. Chin had a choice: his life or an appeal. Sadly and regrettably he chose to die and although he is now unable to present his case on appeal,

---

4. Chin states in a letter to his wife that "[a] letter from lawyer S today, mentioned about an appeal. The reasons for appeal mentioned in the letter were not very strong. It was mentioned also that it will go to the Supreme Court at the end, and it may take a year and a half .... Therefore, it is better not to lodge an appeal." And finally Mr. Chin wrote (7 PM Thursday, February 20th, 1986) "After I have decided 'not to appeal', I feel extremely tranquil." Chin's letter p. 1.

The foregoing quotation is the only language relevant to the issue before the Court. It is taken from a letter which, according to the Assistant United States Attorney, was retrieved from prisoner mail at the time of Mr. Chin's demise and examined in connection with the investigation of his death.

The original letter, which was written in Chinese and translated into English was, so the Court is advised, delivered to Mr. Chin's family.

A copy is, in the interest of protecting privacy, sealed with this record for such use as the United States Court of Appeals may, if called upon, deem appropriate.

**628**

the Court cannot help but conclude that such a choice was a conscious and deliberate one.

Furthermore, Chin, in all probability, would not have been successful on appeal. Although the court recognizes that the determination of the merits of an appeal is solely within the jurisdiction of the Appellate Court, it cannot help but note that the record in the instant case does not reflect one which warrants an appeal. This is so despite the exceptional service rendered him by his counsel. Chin himself took the stand and fully corroborated the Government's case by presenting a complete confession to the jury. Furthermore, Chin, after corresponding with his attorneys regarding the merits of an appeal, decided that "the reasons for appeal mentioned by his attorneys ... were not very strong."

Chin's actions represent to this Court that he did not intend to file an appeal of his conviction and accordingly this Court cannot grant the defense counsel's motion to abate the conviction.

CONCLUSION

For the reasons stated in the memorandum, this Court will deny the defense counsel's motion to abate the criminal proceeding.

An appropriate order shall issue.