Dwain Warren LYNCH, Appellant,

v.

UNITED STATES, Appellee.

No. 87–870.

District of Columbia Court of Appeals.

Argued En Banc Oct. 4, 1988.

Decided April 5, 1989.

David A. Reiser, Public Defender Service, with whom James Klein and Reita Pendry, Public Defender Service, were on the petition, for appellant.

Michael W. Farrell, Asst. U.S. Atty., for appellee. Joseph E. diGenova, U.S. Atty. at the time the petition was filed, Helen M. Bollwerk, G. Paul Howes, and Sharon A. Sprague, Asst. U.S. Attys., also entered appearances, for appellee.

Before ROGERS, Chief Judge,[1] MACK, NEWMAN, FERREN, BELSON, TERRY, STEADMAN and SCHWELB, Associate Judges, and PRYOR, Senior Judge.[2]

NEWMAN, Associate Judge:

On this appeal, Lynch challenges his pretrial detention ordered pursuant to D.C.

---

1. Judge Rogers was an Associate Judge of this court at the time of argument. Her status changed to Chief Judge on November 1, 1988.

2. Judge Pryor was Chief Judge of this court at the time of argument. He was commissioned as a Senior Judge on November 2, 1988.

Code § 23–1325(a) (1988 Supp.).[3] He contends that (1) the procedures afforded him deprive him of liberty without due process; and (2) the evidence does not support the order of detention. A division of this court heard and decided his appeal. *Lynch v. United States*, 534 A.2d 658 (D.C.1987). The division found no constitutional violation in the procedures afforded Lynch. However, in the exercise of "our inherent supervisory power," the division directed that "the government must in the future prove an individual's dangerousness by clear and convincing evidence before he can be detained pursuant to § 23–1325(a)." *Id.* at 661. The division rejected Lynch's other two contentions. By order dated June 2, 1988, we granted Lynch's petition for rehearing *en banc* and vacated the division opinion. On authority of *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (as distinguished from "our inherent supervisory power"), we hold that where pretrial detention is sought pursuant to § 23–1325(a), the government must prove dangerousness by clear and convincing evidence. We reject Lynch's other contentions.

## I

The evidentiary and procedural facts are set forth in the division opinion. We will not repeat them in detail. Suffice it to say, Lynch was charged with first-degree murder while armed. Pursuant to § 23–1325(a), the government sought an order detaining him without bond pending trial. An evidentiary hearing was conducted by Judge Weisberg after he had denied Lynch's motion seeking procedural rights not afforded by § 23–1325(a). Judge Weisberg ruled that the statutory requirement of probable cause to believe that the defendant had committed the charged offense was a constitutionally permissible stan-

dard. With respect to the provision of § 23–1325(a) as to the defendant's future dangerousness, Judge Weisberg was mindful of this court's decision in *De Veau v. United States*, 454 A.2d 1308, 1316 (D.C. 1982) (§ 23–1325(a) statutory standard of "reason to believe" future dangerousness equated with probable cause), *cert. denied*, 460 U.S. 1087, 103 S.Ct. 1781, 76 L.Ed.2d 351 (1983). However, he was likewise mindful of *United States v. Salerno, supra*, decided five years after *De Veau, supra*. Stating that he was acting out of an abundance of caution without explicitly deciding whether *Salerno* vitiated *De Veau*, Judge Weisberg required the government to prove future dangerousness by clear and convincing evidence. After the hearing, Judge Weisberg ruled that there was probable cause to believe that Lynch had committed the charged offense, and that the government had proved future dangerousness by clear and convincing evidence. Finding that the other statutory requirements had been met, Judge Weisberg ordered Lynch detained without bond pending trial.

At oral argument, *en banc*, the government indicated that it had no objection to our deeming *De Veau* as having been superseded by *Salerno*. Consequently, we later requested the parties each to submit a proposed written dispositive order. What follows in Section II, with an added footnote 6, is basically the United States' submission.

## II

We hold that:

■■■ (1) The trial court, in making a finding of dangerousness under D.C.Code § 23–1325(a), must employ the standard of clear and convincing evidence; *DeVeau, supra*, is overruled to the extent that it

---

3. Section 23–1325(a) provides:

(a) A person who is charged with murder in the first degree shall be treated in accordance with the provisions of section 23–1321 unless the judicial officer has reason to believe that no one or more conditions of re-

lease will reasonably assure that the person will not flee or pose a danger to any other person or to the community. If such a risk of flight or danger is believed to exist, the person may be ordered detained.

contradicts this requirement.[4] We stress, however, that this standard applies to the ultimate determination of dangerousness which the trial court must make, not to each individual fact on which the court relies. "The sum of an evidentiary presentation may well be greater than its constituent parts." *Bourjaily v. United States*, 483 U.S. 171, 180, 107 S.Ct. 2775, 2781, 97 L.Ed.2d 144 (1987).

■ (2) In making a finding as to commission of the offense, the trial court must continue to employ the probable cause standard of *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *see United States v. Salerno, supra* (noting separate requirements under federal pretrial detention statute of proof of offense by probable cause and proof of dangerousness by clear and convincing evidence).[5]

■ (3) The trial court must continue to conduct the same type of hearing and employ the same type of discretion as set forth in *United States v. Edwards*, 430 A.2d 1321 (D.C.1981) (*en banc*), *cert. denied*, 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982). We reject any notion that clear and convincing evidence cannot be established by hearsay, and we decline to erect a presumption in favor of live testimony in § 23–1325 hearings that would be destructive of the government's legitimate need for witness confidentiality at this early stage of the proceedings. *See Edwards, supra*, 430 A.2d at 1338.[6]

(4) Applying the above standards to appellant's detention, we conclude that the order of detention is supported by the proceedings below, D.C.Code § 23–1324(b) (1981), essentially for the reasons stated in the vacated division opinion. *Lynch, supra*, 534 A.2d at 661–62.

### III

■ While this case has been pending on Lynch's appeal challenging his pretrial detention, he was convicted of second-degree murder and sentenced to a term of imprisonment. Thus, he is no longer being detained pursuant to § 23–1325(a). At our request, the parties submitted memoranda on the impact of *Murphy v. Hunt*, 455 U.S. 478, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982), on our mootness doctrine enunciated in *United States v. Edwards, supra*, 430 A.2d 1321, at 1324 n. 2. In *Murphy v. Hunt*, a challenge to a pretrial detention order pursuant to Art. I, Section 9 of the Nebraska Constitution, the Supreme Court refined the federal mootness doctrine. The Court held that unless the case involved an issue which was likely of repetition between the same parties, it was moot, citing to *Weinstein v. Bradford*, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (per curiam) ("class action" the only exception to the mootness doctrine). The parties in our present case agree that the decisions of the Supreme Court on the issue of mootness are not binding on this court. The United States, however, urges us to follow *Murphy v. Hunt* and *Weinstein v. Bradford*. We decline to do so. Rather, we reaffirm our holding in *United States v. Edwards, supra*, 430 A.2d at 1324 n. 2. The fact that a case may or may not be a quasi class action is a factor this court may consider in deciding whether to dismiss an action as moot. However, quasi class action is not a

---

**4.** We express no view on whether, in light of *Salerno, supra*, the clear and convincing evidence standard would apply to the finding of dangerousness required by the separate pretrial detention statute, D.C.Code § 23–1322, which limits pretrial detention to sixty to ninety days. *See* D.C.Code § 23–1322(d)(2)(A), (4) (1981 & 1988 Supp.).

**5.** On the facts of this case, we need not decide whether *impermissible* "bootstrapping" would occur were the government to rely exclusively on probable cause plus the circumstances of the charged crime to show dangerousness by clear and convincing evidence. We are confident that the government will attempt in each case to prove either (1) more than probable cause to believe that the defendant committed the murder, or (2) additional facts manifesting the defendant's dangerousness beyond proof that he committed the offense.

**6.** A trial judge may, of course, consider the hearsay character of the government's evidence in determining whether a clear and convincing showing has been made. The trial judge may, and in appropriate cases we are confident will, require that the hearsay evidence be buttressed by otherwise admissible evidence to meet the clear and convincing standard.

necessary condition to deciding the issue on the merits in face of a mootness challenge.

## IV

For reasons generally stated in the division opinion, we reject Lynch's other contentions.

*Affirmed.*

MACK, Associate Judge, concurring in part and dissenting in part:

I applaud the majority's decision to require clear and convincing evidence of dangerousness before allowing pretrial detention, and thus its overruling of our conflicting utterance in *DeVeau v. United States,* 454 A.2d 1308 (D.C.1982). Like Judge Ferren, however, I reject the conclusion that this evidence of dangerousness may be established through mere hearsay, and that due process requires no more than the cursory procedural protections approved in *United States v. Edwards,* 430 A.2d 1321 (D.C.1981) (en banc), *cert. denied,* 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982). Moreover, because of the context in which this case has arisen, been argued and decided, I deem it important to say that I persist in my conviction that pretrial detention without bail is not justified in non-capital cases.[1] *See Edwards, supra,* 430 A.2d at 1365 (Mack, J., dissenting).

The notion that, pending trial, a defendant accused of a non-capital offense may be detained without bail must rest upon two broad assumptions. These assumptions, embraced to provide practical solutions to crime escalation but raising troubling constitutional considerations, are: first, that the Eighth Amendment injunction against excessive bail implies no underlying right to bail; and second, that the interest of an accused in remaining at liberty may be counterbalanced by society's interest in protection against persons thought to be dangerous. Engrafted on these broad assumptions are myths that are debunked by day-to-day experience—

the myth that dangerousness can be predicted with any degree of accuracy and the myth that pretrial detention is not punitive but regulatory. Put aside for a moment the fact that this notion reduces our Constitution to esoteric symbolism; a solution based upon a house of cards can hardly be expected to be a solution.

The extent to which the lulling ploy of public safety may in fact pose a threat to public protection is concealed by an attractive but insidious logic. As the public interest in safety increases, the reasoning goes, the relative liberty interest of a "criminal" is progressively reduced. Thus it is that a member of the public who is accused of a serious crime may enjoy less constitutional protection than a member of the public accused of a minor offense— even though, remarkably, the latter may prove to be guilty and the former innocent! When we become willing to countenance pretrial detentions without bail on the basis of nothing more than the seriousness of a charge, we become impervious to assertions of the rights of an accused, and porous to arguments that equate an accusation with a foregone conclusion of guilt. That is too great a price to pay, particularly in the absence of empirical data that the "routine" detentions alluded to by Judge Ferren have provided the sought-after solution. Indeed, they have accomplished little more than to generate new problems.

In sum, I join the majority only in its adoption of the "clear and convincing" evidentiary standard for the determination of dangerousness before pretrial detention.[2] I join Judge Ferren in his reasoning that the evidence must be more than hearsay, and that the procedural limitations of *Edwards,* to which this court still clings, are inadequate to comport with due process.

FERREN, Associate Judge, concurring in part and dissenting in part:

I join in the majority opinion except for footnote 4 and Parts II(3) and (4). Al-

---

1. Mr. Lynch was charged with first-degree murder, a crime traditionally subject to capital punishment. The majority's cross references to, and reliance upon, *Edwards* (where the crime was not capital) prompt my discussion here.

2. I should add that I also agree with the majority's analysis as to the "mootness" issue.

though I agree there is no way at this point to afford Lynch any relief, I would have voted to reverse the pretrial detention order because the government did not show why it was necessary to rely solely on hearsay to demonstrate that Lynch was too dangerous for bail.

## I.

In Part II(3), the majority permits hearsay testimony to establish a defendant's dangerousness. The government does not have to sustain the burden of showing why the witnesses who have first-hand information should not be made available and subject to cross-examination. I will discuss in Part III why I believe this violates due process. Initially, however, I believe a few preliminary comments are in order.

Because of court congestion, suspects in first-degree murder cases are likely to face detention without right to bail for more than a year before trial. *See Montague v. United States,* 522 A.2d 866 (D.C.1987). And, as court congestion increases, I fear such detention will get longer and longer, with the result that our courts permit the lack of judicial resources to bend and reshape constitutional rights for the convenience of the community, just as this court unfortunately did in *Montague* and, earlier, in *Graves v. United States,* 490 A.2d 1086 (D.C.1984) (*en banc*) (sustaining trial court denial of motion to dismiss for lack of speedy trial when appellant was incarcerated, unable to make bond, for 25 months between arrest and trial).

In *United States v. Edwards,* 430 A.2d 1321 (D.C.1981) (*en banc*), *cert. denied,* 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982), this court struggled over a case of first impression nationally: the question whether an accused in a non-capital case has a constitutional right to bail and, if not, what constitutional standards should apply to pretrial detention without bail. At the time, the very idea of such preventive detention was tremendously controversial, and the decision for many on the court and in the community was an agonizing one. Such detention now is routine. In the face of a crime problem that literally overwhelms our community and our detention facilities, it is too easy to forget—and even to disparage—basic constitutional rights. I worry about that. I therefore am writing here about local legal developments since *Edwards,* in the hope of keeping alive the discussion about what process is due under the Constitution when the government seeks to detain an accused before trial without right to bail.

## II.

The core of the majority opinion is Part II(1) requiring the government to show dangerousness under D.C.Code § 23–1325(a) (1988 Supp.) by clear and convincing evidence. I wholeheartedly agree with the majority here, except for the footnote.

Some background may be helpful. D.C. Code § 23–1322(b)(2)(B) (1981), pertaining primarily to "dangerous crimes" and "crimes of violence" (as defined), conditions pretrial detention without bail on trial court findings that support a conclusion that "there is no condition or combination of conditions of release which will reasonably assure the safety of any other person or the community." In *Edwards,* this court sustained the constitutionality of § 23–1322, concluding—significantly—that all such findings, based on factors specified in D.C.Code § 23–1321(b) (1981), may be supported merely by probable cause to believe they are true. I dissented from this latter conclusion, believing due process requires that findings in support of preventive detention, predicting future dangerousness, must be premised on clear and convincing evidence. *Edwards,* 430 A.2d at 1350, 1360 (Ferren, J., dissenting).

*Edwards,* of course, concerned pretrial detention without bail for alleged crimes which, at the time, entitled the accused to a trial or to bail within 60 days of such detention. (That provision has been amended to extend this period to 90 days with court approval. D.C.Code § 23–1322(d)(4) (1988 Supp.).) This case is different. It concerns D.C.Code § 23–1325(a) (1988 Supp.), authorizing pretrial detention without bail—and without

the statutory right to a speedy trial within 60 to 90 days—when someone is charged with first-degree murder and a judicial officer has "reason to believe that no one or more conditions of release [under § 23–1321] will assure that the person will not flee or pose a danger to any other person or to the community." In *De Veau v. United States*, 454 A.2d 1308, 1316 (D.C. 1982), a division of this court sustained the constitutionality of D.C.Code § 23–1325(a) (1988 Supp.). Relying on *Edwards*, the *De Veau* court construed § 23–1325(a)—in particular, the words "reason to believe"— to mean that findings of future dangerousness justifying unlimited pretrial detention could be premised merely on probable cause. Clear and convincing evidence was not required.

*De Veau* has meant that anyone accused of first-degree murder can be lawfully arrested and detained without right to bail based merely on probable cause to believe that otherwise the accused is likely to flee or poses an unacceptable danger to others. Thus, probable cause has been enough to sustain detention while the government waits almost 9 months to indict, followed by a trial almost 13 months after detention began. *See Montague, supra.* The division majority in *Montague* apparently did not agree that such extended pretrial detention without bail very likely had become punitive and thus violated due process. *See id.*, 522 A.2d at 867 (Ferren, J., dissenting). *Montague*, therefore, shows why it is so important that the initial findings justifying detention based on dangerousness must be premised on clear and convincing evidence, as the *en banc* court holds today. If someone is to be held in jail, without right to bail, for 13 months—or more—before indictment and trial, then there had better be a substantially sounder basis for imposing such a significant restraint on one's liberty than mere probable cause to believe the accused poses a danger to others, the minimal standard permitted to justify a lawful arrest.

Influenced by the Supreme Court's decision in *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), the *en banc* majority now agrees with the constitutional requirement of a clear and convincing evidence standard. The majority thus overrules *De Veau*'s reliance on probable cause for § 23–1325(a) cases. I cannot emphasize strongly enough that— despite footnote 4 to Part II(1)—the *en banc* majority today also casts a cloud over the probable cause analysis in *Edwards* applicable to D.C.Code § 23–1322 (1981 & 1988 Supp.). No one now can be sure that the statutory right under § 23–1322 to a trial within 60 to 90 days is a principled enough reason for justifying preventive detention based merely on probable cause in cases not involving charges of first-degree murder. My own view is that, given the majority's analysis, the trial court should now require clear and convincing evidence for pretrial detention under § 23–1322.

III.

The clear and convincing evidence issue is not all that is involved here, however. I believe "due process entitles the accused to notice of all the charges about past or present conduct he or she will face at the pretrial detention hearing." *Edwards*, 430 A.2d at 1351 (Ferren, J., dissenting); *see id.* at 1356–57. The majority ignores this issue. I also believe that due process "entitles the accused to confront and cross-examine any government witness" whose testimony in support of dangerousness the government intends to proffer, "unless the government sustains the burden of showing good cause why the witness should not be called." *Id.* at 1351; *see id.* at 1357–58. My colleagues' rejection of this elementary requirement of due process is why I so profoundly disagree with Part II(3) of the majority disposition.

I will not repeat the arguments I elaborated in *Edwards*. Rather, I shall simply note why the record in this case shows a serious problem with a finding of dangerousness based primarily on hearsay that would be inadmissible at a criminal trial, without the government's even having to demonstrate why testimony by its witnesses on dangerousness, subject to cross-examination, would be unduly burdensome. In this case, the government proffered evi-

dence of Lynch's juvenile record of second-degree burglary (one consent decree and one adjudication) coupled with a revocation of probation for truancy, all apparently occurring three years before the present case. The government also proffered evidence of Lynch's adult convictions for receiving stolen property and for unauthorized use of a vehicle, followed by successful completion of probation. Finally, there was evidence Lynch had tested positive for drug use. It is inconceivable to me that this evidence—containing no adult criminal record of a "dangerous crime," D.C.Code § 23–1331(3) (1981)—could be deemed clear and convincing evidence of future dangerousness within the meaning of the pretrial detention statute. So we have the question whether Lynch's prior record, when coupled with the government's proffered evidence of Lynch's alleged involvement in a first-degree murder, can reasonably be said to provide clear and convincing evidence "that no one or more conditions of release [under § 23–1321] will reasonably assure that the person will not flee or pose a danger to any other person or to the community." D.C.Code § 23–1325(a) (1988 Supp.).

Counsel for the government conceded at oral argument that the hearsay evidence of Lynch's alleged involvement in the murder was not, in itself, clear and convincing evidence of his dangerousness. That conclusion, to me, is dispositive here. If that evidence is less than clear and convincing, I do not understand how appellant's prior record of antisocial conduct—as a juvenile three years earlier and as an adult culminating in successful probation after convictions not involving a "dangerous crime," as defined—can add enough to the calculus to justify preventive detention.

It is unclear to me whether counsel for the government finds the murder evidence itself less than clear and convincing for detention purposes because it is hearsay, or because this one alleged instance of violent conduct, even if proved by clear and convincing direct testimonial evidence at the pretrial hearing, would not be sufficient unless coupled with evidence of previous antisocial conduct suggesting a pattern and practice of serious disregard for the law. Whatever the answer, the government basically argues that the hearsay evidence is of sufficient quality to imply trustworthiness and that this evidence, when coupled with Lynch's prior record, provided a clear and convincing enough basis to warrant detention without bail.

In support of this proposition, the government cites hearsay testimony through a police officer that the same witness identified both Lynch and his co-defendant (who allegedly shot the victim). The government also notes hearsay testimony through the same officer that a Virginia state trooper had arrested appellant and his co-defendant together in Northumberland County, Virginia, a day or so after the shooting. Finally, the same officer provided hearsay testimony about a police investigation that had revealed a rivalry between Job Corps youth from Harrisburg, Pennsylvania, where the decedent had resided, and those from the District of Columbia, where Lynch and his co-defendant lived. Because the decedent, Lynch, and the co-defendant had been together in the same Job Corps facility, the government argued that "the Court could well infer that this was an execution," although the testifying officer stated he had learned the decedent knew the co-defendant in the Job Corps program "but did not, was not connected with Mr. Lynch."

I would agree that if some of the critical evidence supplied by hearsay testimony had been substantiated by witnesses who had testified from their own personal knowledge, subject to cross-examination, then the trial court could have found dangerousness by clear and convincing evidence. But here, one police officer supplied all the information on which the trial court relied, none of which the officer had learned from personal observation. He therefore could not be cross-examined very closely. When one can be detained without bail for a year or more before trial, *see Montague, supra,* that hearsay basis for the detention order is insufficient unless the government can sustain the burden of convincing the court that, in the interest of

the public, no witness to any of these events should have to appear. *See Edwards*, 430 A.2d at 1351, 1355 (Ferren, J., dissenting). On this record, I would have voted to reverse the pretrial detention order, absent a showing as to why hearsay was necessary.

At oral argument, counsel for the government stressed his concern that government witnesses often are reluctant to appear before the grand jury, let alone at trial, out of fear of the accused or of the accused's compatriots. There would be all the greater reluctance, we were told, if an on-scene witness had to appear at a preliminary hearing. I appreciate this concern. *See Edwards*, 430 A.2d at 1358 (Ferren, J., dissenting). But not all witnesses in every case will fit into this category. Furthermore, even when the government's concern is justified, I perceive no reason why the government, as a condition of going forward with hearsay testimony, should not feel confident presenting its reasons for consideration by the trial court, subject to a right of expedited appeal, D.C.Code § 23-1324(d) (1981). No other type of criminal proceeding permits incarceration for an appreciable length of time, without the right to bail or an early trial date, based solely on hearsay.[1]

### IV.

The majority's overruling of *DeVeau* on the basis of the Supreme Court's opinion in *Salerno* is a step forward. But the court's position in Part II(3) repeats what I believe was an incorrect ruling in *Edwards*. I dissent from that. It will be interesting, moreover, to see how this court handles the case—which will surely come—anticipated by the majority's footnote 4.

---

1. According to the Supreme Court in *Salerno*, 481 U.S. at 752, 107 S.Ct. at 2104, its earlier decision in *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), authorizes under the fourth amendment merely a "limited postarrest detention" based on probable cause that often is supplied by hearsay. *See also Unit-* ed States v. Edwards, 430 A.2d at 1351, 1352-54 (Ferren, J., dissenting). *Gerstein*, therefore, does not foreclose a fifth amendment limitation on extended detention based on hearsay evidence of dangerousness. *See id.*, 430 A.2d at 1352-54 (Ferren, J., dissenting).