**Saundra BAUGH, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPART-MENT OF CONSUMER AND REGU-LATORY AFFAIRS, Respondent.**

**No. 91–AA–307.**

District of Columbia Court of Appeals.

Argued May 4, 1992.

Decided Aug. 11, 1992.

Michael R. Schuster, Washington, D.C., for petitioner.

Rosalyn Calbert Groce, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief for the District of Columbia.

Before STEADMAN and SULLIVAN, Associate Judges, and GALLAGHER, Senior Judge.

STEADMAN, Associate Judge:

Saundra Baugh, a long-time resident of D.C. Village, was moved from an intermediate care unit at D.C. Village to a hospital because of an elevated temperature. Twelve days later, she was discharged from the hospital and returned to a skilled care unit at D.C. Village. The principal question before us is whether, and the extent to which, these hospital moves implicated the Nursing Home and Community Residence Facility Residents' Protection Act of 1985, D.C.Code §§ 32–1401 *et seq.* (1988 Repl.).[1]

Under the Act, a "facility"[2] may not, without the consent of the resident, "discharge the resident, transfer the resident to another facility, or relocate the resident from 1 part or room of the facility to another" except for certain specified reasons.[3] D.C.Code § 32–1431(a). A resident must be given advance notice of any such planned move, and has the right to a prompt hearing if the resident wishes to contest the move. D.C.Code §§ 32–1432–1433. In accordance with her asserted rights under these sections, Baugh filed a hearing request challenging her moves to

---

1. The administrative decision under review here also ruled on a subsequent asserted "discharge" of Ms. Baugh from D.C. Village. However, she has been readmitted to the Village and at oral argument, all parties acknowledged that the issue was effectively moot. The same cannot be said of the issue ruled on in this opinion, since it involves a short-term situation that can readily reoccur. *Lynch v. United States*, 557 A.2d 580, 582–83 (D.C.1989) (en banc).

2. A "facility" means "a nursing home or community residence facility operating in the District." D.C.Code § 32–1401(6). D.C. Village is a nurs-

ing home run by the District, to which the Act is concededly applicable. Corporation Counsel appears in this appeal for the District in its capacity as the operator of D.C. Village and not as a representative of its Department of Consumer and Regulatory Affairs, which rendered the administrative decision appealed from.

3. Included among those reasons is a move "essential to meet that resident's documented health-care needs or to be in accordance with his or her prescribed level of care." D.C.Code § 32–1431(a)(1).

and from the hospital. No such hearing was ever held. Rather, after protracted jurisdictional and related proceedings, a senior administrative law judge of the Department of Consumer and Regulatory Affairs ("DCRA") ruled that the Act did not encompass the challenged moves and therefore Ms. Baugh had no right to a hearing.[4]

It is, of course, settled in our jurisprudence that an agency's interpretation of a statute that it administers should be upheld unless it is "plainly erroneous or inconsistent with the enabling statute."[5] *Jones v. Dept. of Employment Services*, 553 A.2d 645, 647 (D.C.1989) (citation omitted). Furthermore, we are mindful of the settled maxim that "if the words are clear and unambiguous, we must give effect to the [statute's] plain meaning." *James Parreco & Son v. District of Columbia Rental Housing Comm'n*, 567 A.2d 43, 45 (D.C. 1989). Applying these principles, we think the agency was justified in its ruling that neither the move *from* the nursing home to the hospital nor the move *from* the hospital to the nursing home, *each standing alone*, was subject to the Act. The Act only applies to a transfer to another "facility" or a relocation of a resident within a "facility." And a "facility" is a defined term which "means a nursing home or community resident facility operating in the District." D.C.Code § 32–1401(6). A "nursing home" and a "community resident facility" are in turn defined terms in a section which sepa-

rately defines a "hospital." D.C.Code §§ 32–1301(a)(1), –1401(3), –1401(8). Likewise, we think the agency reasonably interpreted the word "discharge" as not encompassing a short-term, temporary transfer of a resident to a hospital for medical care with every expectation of a prompt return to the facility, at least where the stay was less than fifteen days, as here.[6]

An open question remains whether the Act may apply to a situation where, as here, the resident is transferred to a hospital on a temporary basis but upon her return is placed in a different "part or room" of the facility. The Act would clearly apply to a direct "relocation" of a resident from an intermediate care unit to a skilled care unit within D.C. Village, and the issue is whether the moves to and from the hospital, taken together, amount to the same thing for purposes of the Act.

We do not perceive that this particular issue was squarely presented to or dealt with by the agency, which rather appears to have focused principally on the claim that the moves to and from the hospital were each subject to the Act.[7] Indeed, to the extent that the agency dealt with the changed level of care within D.C. Village, it said that the move "would appear to reflect good nursing practice and a medical judgment rather than an attempt to punish or penalize Petitioner," something that more normally would be determined after a fac-

---

**4.** Under the Act, "Any person who is aggrieved by the results of a hearing held by the Mayor pursuant to this subchapter shall have a right to judicial review in accordance with § 1–1510." D.C.Code § 32–1443; *see* D.C.Code § 1–1510 (1987) ("contested case" requirements for review). In considering direct administrative appeals, we have held that review may be sought for "cases in which there has been an evidentiary hearing, meeting the 'contested case' requirements, *or at least an effort to obtain such a hearing which the agency erroneously denied.*" *Auger v. District of Columbia Bd. of Appeals & Review*, 477 A.2d 196, 205–06 (D.C.1984) (emphasis supplied).

**5.** The relevant agency here is DCRA, not the Department of Human Services ("DHS"). Under the Act, a hearing is to be conducted by the Mayor, who has in turn delegated hearing responsibility to DHS alone in cases involving Medicaid eligibility determinations and addi-

tionally to DCRA in other than Medicaid cases. The administrative law judge found that Ms. Baugh's case did not involve a Medicaid determination and that it was therefore properly before DCRA.

**6.** From the related proceedings involving an asserted discharge of Ms. Baugh, *see* note 1, *supra*, it appears that a hospital stay exceeding fifteen days introduces complications which may require at least a formal "discharge."

We do not reach the broader issue whether the resident could be moved to the hospital in any event against the resident's will if he or she elected to refuse such treatment. *See generally In re A.C.*, 573 A.2d 1235 (D.C.1990) (en banc).

**7.** Likewise at oral argument, as we understood it, petitioner asked us to focus on her claim that all moves both to and from hospitals are subject to the Act, regardless of whether the resident was relocated within the facility itself.

tual hearing. While under ordinary circumstances, we might remand to the agency for a fuller exposition of the issue, we see no point in doing so in this case. The incident in question occurred over four years ago, and subsequent events have passed it by.[8] Both parties indicated at oral argument that this entire area is one in which significant changes are occurring both in administrative practice and in the governing and superseding federal law and regulations. Accordingly, we leave the issue for another day, with a fuller record both factual and legal, and affirm the order appealed from only within the limits discussed in this opinion.

*So ordered.*

---

8. Less than a week after her return, Ms. Baugh was again hospitalized for a sufficient period of time that led to a "discharge" notice and a dispute that has since mooted out. *See* note 1, *supra.*