**Ronald HARVEY, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 9309.**

District of Columbia Court of Appeals.

April 5, 1978.

John Z. Noyes, Washington, D. C., was on the motion for appellant's counsel.

Earl J. Silbert, U. S. Atty., John A. Terry and Cheryl M. Long, Asst. U. S. Attys., Washington, D. C., were on the opposition to motion for appellee.

Before NEBEKER, YEAGLEY and FERREN, Associate Judges, in chambers.

NEBEKER, Associate Judge:

 The appellant in this case died of congestive heart failure while a direct appeal from his conviction was pending in this court. Counsel for appellant has moved this court for reversal of appellant's conviction and dismissal of the indictment. We direct the clerk to strike the motion as

5. *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

improvidently filed, because counsel for appellant has no standing to file a motion on behalf of the deceased appellant. The government has filed a suggestion of death. We dismiss the appeal.

On the basis of *Dove v. United States*, 423 U.S. 325, 96 S.Ct. 579, 46 L.Ed.2d 531 (1976), we dismiss the appeal as moot. *Durham v. United States*, 401 U.S. 481, 91 S.Ct. 858, 28 L.Ed.2d 200 (1971), on which counsel for appellant relies has been overruled by *Dove*. Although both of those cases involved petitions for certiorari[1] rather than as here, a direct appeal, we see no reason to distinguish the two.[2]

█ The dissent is willing to presume that there may be collateral consequences attending our disposition of this appeal. *See, e. g.*, D.C. Code 1973, § 19–103(a) (forfeiture of dower rights upon conviction of adultery); *id.* § 19–320(a) (forfeiture of inheritance and distributive rights upon conviction of felonious homicide); *id.* § 19–320(b) (insurance policy procured by person convicted of felonious homicide on life of victim is void). No such collateral consequences have been asserted in this case. More importantly, unlike the situation in the typical civil case, the rights and obligations conferred by a final judgment of the trial court in a criminal case do not descend to the heirs of the deceased party. *See, e. g.* U.S. Const. art. III, § 3 (Congress may not declare corruption of blood or forfeiture of property for treason). To hold that, because of possible collateral consequences, there remain collateral interest affected by a criminal appeal would be to hold, in effect, that persons affected by those collater-

al interests are conclusively bound by the judgment of conviction in a case such as this—an issue we need not now reach.[3]

█ Our holding, finally, is consistent with the firmly established principle which the dissent would sacrifice to speculative collateral consequences—that a trial court judgment is presumed valid and *is* valid until the losing party carries the burden of convincing the appellate court that the trial court erred. *Compare, e. g.*, D.C. Code 1973, § 23–1322(b) ("No person . . . shall be ordered detained [prior to trial] unless . . .") *with id.* § 23–1325(c) ("A person who has been convicted of an offense and sentenced to a term of confinement or imprisonment and has filed an appeal or a petition for a writ of certiorari shall be detained unless . . ."). *See* H.R.Rep. No. 907, 91st Cong., 2d Sess. 186–87 (1970) ("First and most important [among the reasons for the difference between the above cited statutes], the conviction, in which the defendant's guilt of a crime has been established beyond a reasonable doubt, is presumably correct in law, a presumption supported by the low rate of reversal of criminal convictions in the Federal system."). *See also* Super.Ct.Cr.R. 38(a) (stay of execution of sentence pending appeal automatic only where the death sentence is imposed).

Accordingly, the appeal is

*Dismissed.*

FERREN, Associate Judge, dissenting:

In *Durham v. United States*, 401 U.S. 481, 91 S.Ct. 858, 28 L.Ed.2d 200 (1971), the

1. The Supreme Court declined to distinguish direct appeals from certiorari petitions for the purpose of determining mootness in *Durham v. United States, supra* at 483 n. 1, 91 S.Ct. 858.

2. *But see United States v. Bechtel*, 547 F.2d 1379 (9th Cir. 1977); *cf. United States v. Munsingwear*, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950), holding that a civil case in federal courts which becomes moot while on direct appeal must be reversed and remanded with directions to dismiss.

3. The solution proposed by the dissent—reversal of the conviction and dismissal of the indictment—would, assuming effect upon collateral

interest, affect those interests to the same extent as dismissal of the appeal. For example, if a husband kills his wife, he is not entitled to inherit from her. D.C. Code 1973, § 19–320. Assuming that the husband is tried and convicted of the murder, files an appeal, then dies, then would reversal of the conviction effectively disinherit the wife's heirs to the extent that the husband's estate would benefit from the wife's estate? And would our dismissal of the appeal effectively disinherit the husband's heirs to the same extent? These problems, we again note, are not here presented.

Supreme Court held that petitioner's death while his request for certiorari was pending required abatement of "all proceedings had in the prosecution from its inception." *Id.* at 483, 91 S.Ct. at 860. *Durham* adopted the virtually unanimous view of the lower federal courts. *See, e. g., Crooker v. United States*, 325 F.2d 318 (9th Cir. 1963), and the cases cited therein. However, in *Dove v. United States*, 423 U.S. 325, 96 S.Ct. 579, 46 L.Ed.2d 531 (1976), which also concerns a petitioner's death while the question of certiorari was pending, the Court dismissed the petition and held, without further discussion: "To the extent that *Durham v. United States*, 401 U.S. 481, 91 S.Ct. 858, 28 L.Ed.2d 200 (1971), may be inconsistent with this ruling, *Durham* is overruled."

In *Dove, supra,* at the time the Supreme Court dismissed the petition for certiorari, the appellant had exhausted all appeals of right. Thus, it is understandable why the Court decided no longer to follow, *Durham, supra.* In the present case, however, as in *United States v. Bechtel*, 547 F.2d 1379 (9th Cir. 1977), we are asked, on account of appellant's death, to reverse the conviction and dismiss the indictment *before* a direct appeal, timely filed, has been resolved. I consider it basically unfair not to grant counsel's motion. There may be collateral consequences that will be visited upon appellant's family from his criminal conviction—we do not know. Accordingly, our refusal to grant the motion in circumstances when an appellant, now deceased, has not had an opportunity to exercise his right of appeal may work a serious injustice. This may be all the more true in future cases when the majority view here is applied.*

The Ninth Circuit Court of Appeals in *Bechtel, supra,* does not read *Dove* in a way that would require denial of the motion here. Nor do I. Although, as the majority opinion in the present case points out, the Supreme Court did decline "to distinguish direct appeals from certiorari petitions for the purpose of determining mootness in *Durham*," it declined to do so for the purpose of *extending* the lower court dismissal-of-indictment practice from direct appeals to certiorari petitions. It does not *necessarily* follow that the Supreme Court in its cryptic disposition of *Dove* has overruled *Durham* not only as applied to death during pendency of a certiorari petition but also with respect to direct appeals—a question not presented. Until the Supreme Court does so, I join the *Bechtel* court in believing that under the circumstances presented here the appeal should be dismissed and the case remanded to the Superior Court with directions to dismiss the indictment.

---

* The many questions about collateral consequences raised by the majority opinion reinforce my view that it is not appropriate to move beyond clear Supreme Court authority on this issue.