Mark E. **TYLER**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 95–CO–183.

District of Columbia Court of Appeals.

Argued En Banc June 5, 1996.

Decided Sept. 23, 1997.

Eli Gottesdiener, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief for appellant.

Elizabeth Trosman, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, and Robert J. Spagnoletti, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, and FERREN, TERRY, STEADMAN, SCHWELB, FARRELL, KING, RUIZ and REID, Associate Judges.

RUIZ, Associate Judge:

■ This case presents us with the question whether The District of Columbia Bail Reform Act, D.C.Code § 23–1322 (1996), provides to a person sought to be detained pretrial the right to present evidence challenging the government's evidence of the charged offense. The government contends that once a grand jury has found probable cause sufficient to return an indictment, the person charged has no right to present evidence concerning the charged offense unless the government is itself relying on circumstances surrounding the charged offense as a reason for pretrial detention. We hold that, notwithstanding the return of an indictment by the grand jury, the express provisions of D.C.Code § 23–1322(e)(1) entitle a person charged with a crime to present evidence about the "nature and circumstances of the offense" and "the weight of the evidence against" him or her for the purpose of providing information that the trial court must consider in making an individualized determination whether the charged person should be detained pretrial.

## I. Facts of the Case

Mark Tyler was arrested and presented on a warrant on January 31, 1995, on a one-count complaint of carnal knowledge of a minor.[1] The government requested preventive detention pursuant to D.C.Code § 23–1322(b), and a hearing was set for February 7, 1997.[2] Five days before the hearing date, a grand jury returned an indictment against Tyler for his conduct with a minor, charging him with one count of carnal knowledge and one count of sodomy.[3]

1. The application for a warrant was approved by the United States Attorney's office on December 29, 1994. It was reviewed and a warrant issued by a judge on January 19, 1995. The warrant was executed 10 days later.

2. Tyler waived his right to have the detention hearing held within three days of presentment.

3. The sodomy charge was dismissed two months later, at the request of the government, because the detective in the case had misunderstood the complainant's description of the incident.

4. Tyler had four prior convictions of attempted carnal knowledge and a conviction of attempted

At the pretrial detention hearing, the government relied on the indictment as establishing probable cause that Tyler committed the offenses of which he was indicted. The government offered no further evidence of the underlying charged offenses and turned, instead, to offer evidence that Tyler was dangerous and should be detained because of his prior convictions for similar offenses against young girls and the fact that he was on probation on the prior convictions at the time of the charged offenses.[4]

The trial court first ruled that once the government had shown probable cause—in this case, through the indictment—and had not proffered any additional evidence of the underlying charges to establish dangerousness, Tyler could not challenge the government's evidence of the charged offenses. Although the trial court subsequently altered its position and allowed a continuance so that Tyler could subpoena witnesses and conduct further investigation into the charged offenses, the trial court eventually returned to its original ruling after requesting further briefing on the issue from both parties. In a written order dated February 13, 1995, the trial court concluded that the pretrial detention hearing would be limited to "the presentation of evidence on the issue of defendant's dangerousness, but this showing may not be made through evidence relating to the weakness of the government's case." The trial court expressed concern that a pretrial detention hearing not be used by the defendant "as a trial on the underlying indictment or as a method for getting discovery from potential witnesses." Tyler was permitted to present evidence relevant to whether he presented a danger to the community,[5] but he was not

possession of cocaine with intent to distribute. In addition, Tyler had been arrested twice in the late 1980's for child sexual abuse. Tyler was on probation for the four convictions of carnal knowledge at the time he was arrested on the underlying charge in this case.

5. Tyler explained that he is employed, and was a former Corrections Department officer who had received an honorable discharge from the Army. He argued that there was no evidence from what he was unable to control himself from what he termed "a passing preferential fancy" for young girls, and that the fact that he had been sentenced to probation in connection with his prior

permitted to introduce evidence he proffered, through the testimony of witnesses, that the complainant had fabricated the charges against him.[6] The trial court ordered that Tyler be detained pretrial, concluding that there was clear and convincing evidence of dangerousness on alternative grounds: "based on the charges on which he has been indicted in conjunction with these prior convictions" and based solely on his prior convictions ("frankly, without even consideration of the indictment ... we're talking about an individual within a very short period of time who has five convictions").

Tyler promptly appealed the trial court's detention order and moved for summary reversal. On May 5, 1995, this court denied the motion for summary reversal and affirmed the order on appeal, with one dissent. On May 8, 1995, three days before the scheduled trial date, Tyler entered a plea of guilty to enticing a minor child under D.C.Code § 22–4110; the government agreed to dismiss the indicted charge of carnal knowledge. On July 18, 1995, Tyler was sentenced to a split sentence of twenty months to five years, with suspended execution of all but a year, and a trial court recommendation for work release in a halfway-house program. The trial court also placed Tyler on probation for five years, with the first six months under intensive supervision, including reporting, continued employment, participation in treatment for his alcohol abuse and sexual problems and a requirement that he not be alone with young girls.

We granted Tyler's petition for rehearing *en banc* on March 12, 1996, and vacated our order of May 5, 1995, affirming the trial court's order of pretrial detention.

## II. Mootness

■ Even though we granted the petition for rehearing *en banc* after we were in-

formed that Tyler had entered a guilty plea, the government continues to argue that Tyler's appeal should be dismissed as moot. Thus, we consider first whether Tyler's guilty plea and conviction renders this appeal non-justiciable.

■ A case is considered to be moot if "there is no reasonable expectation that the alleged violation will recur and ... interim relief or events have completely and irrevocably eradicated the effects of the violation." *In re Morris*, 482 A.2d 369, 371 (D.C.1984) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979)) (internal quotation marks and citations omitted). There is no doubt that even if Tyler were to prevail on the merits of his appeal, the result would have no impact on him in this case because he is no longer being detained pretrial, but is serving the sentence imposed as a result of his guilty plea. However, we do not apply a strict rule of mootness to dismiss a case because it no longer affects the particular appellant, if it presents a matter of importance that is likely to recur, yet evade review with respect to others similarly situated. *Lynch v. United States*, 557 A.2d 580, 582 (D.C.1989); *contra*, *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183–84, 71 L.Ed.2d 353 (1982). Specifically as concerns issues arising from pretrial detention, notwithstanding the defendant's right to expedited consideration by way of a motion for summary reversal, we have recognized that it is altogether probable that the limited period during which a person may be detained pretrial could expire before an appeal is heard on the merits. *See United States v. Edwards*, 430 A.2d 1321, 1324 n. 2 (D.C.1981) (en banc). That is particularly so in this case, where the appeal was first denied by a motions division of the court, but the full court subsequently decided to hear the matter *en banc*.[7]

---

convictions indicated that he had not been considered a danger to the community.

6. Tyler proffered that he had several witnesses who would raise serious questions about the complainant's truthfulness. Specifically, Tyler proffered that the complainant had told her cousin that she had not engaged in sex with Tyler; that the complainant had previously said to the proffered witnesses that she wanted to have sex

with Tyler; and that the complainant had said she would bring a false charge of sexual misconduct against another man who lived in Tyler's apartment building because he had called her a "bitch."

7. By the time this court heard argument on Tyler's motion for summary reversal and issued its opinion affirming the trial court's detention order, Tyler had already been in pretrial detention

By deciding to hear the case *en banc*, we have indicated that the case raises an issue of "exceptional importance." D.C.App. R. 40(e)(2). This issue is not limited to Tyler's case; the trial court applied a *per se* rule, without considering the statutory requirements that apply in every case of pretrial detention under D.C.Code § 23–1322(b). The government and dissenting opinion argue that the precise sequence of events in Tyler's case is unusual and unlikely to recur. The likelihood of recurrence, however, is more within the control of the government than the defendant. The government determines the timing of the presentment of the case to the grand jury and the return of the indictment, specifically, whether indictment occurs before or after a preventive detention hearing. The government also determines whether it will rely exclusively on prior criminal conduct to prove dangerousness. This case demonstrates that the appellate process, with its inherent delay, may not be effective to prevent prolonged pretrial detention before there can be *en banc* appellate review of the issue presented here. Finally, in this case we have the benefit of full briefing by the U.S. Attorney's Office and the Public Defender Service, who represent interests that will continue to be controverted in future cases. Therefore, we conclude that we should consider and decide the appeal.

### III. The Right to Present Evidence Challenging an Indicted Offense at a Pretrial Detention Hearing

We turn now to the question raised by this appeal: whether a defendant has the right, at a pretrial detention hearing, to present evidence challenging the government's evidence that he or she committed an indicted offense. We hold that the defendant does have such right, as provided by the plain language of the Bail Reform Act of 1992, D.C.Code § 23–1322(d)(3) and (4) and (e)(2).

 Before considering the specific statutory language, we pause to consider the matter in context. A person initially comes within the criminal justice system as a result of an arrest, based on probable cause.[8] Typically, arrest upon a criminal complaint precedes indictment. The Fifth Amendment requires that a person can be "tried for a [felony] only on a presentment or indictment of a grand jury." *Wooley v. United States*, 697 A.2d 777, 779 (D.C.1997) (quoting U.S. Const. amend. V). A grand jury indictment represents an independent assessment by representatives of the community, albeit in a non-adversarial context, that there is probable cause that the defendant committed a specified offense. *See United States v. Mandujano*, 425 U.S. 564, 571, 96 S.Ct. 1768, 1773–74, 48 L.Ed.2d 212 (1976). The grand jury's probable cause determination is sufficient to authorize the government to proceed with its prosecution of the indicted charge and to require the defendant to answer the charge at trial. Notwithstanding indictment, however, a defendant continues to be entitled to the presumption of innocence until and unless the government meets its burden of proof of guilt beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 363, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970); Criminal Jury Instructions for the District of Columbia, No. 2.08 (4th ed.1993). Punishment for crime may not be imposed unless the government first meets that burden. *See Bell v. Wolfish*, 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1979).

 The Supreme Court has recognized that the compelling governmental interests in ensuring a defendant's appearance at trial and community safety may justify preventive detention. Thus, in appropriate cases, pretrial detention is a constitutionally permissible regulatory vehicle to provide a temporary period during which a person charged with a serious crime may be detained even though that person's guilt has not been established

---

for over 90 days and was scheduled to begin trial in six days. *See McClain v. United States*, 601 A.2d 80, 83 (D.C.1992).

**8.** A person may be arrested on a warrant supported by probable cause. U.S. Const. amend. IV; *Beck v. Ohio*, 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142 (1964), or based on an

officer's on-the-scene evaluation that there is probable cause to believe that the person has committed a crime. *See Gerstein v. Pugh*, 420 U.S. 103, 113–14, 95 S.Ct. 854, 862–63, 43 L.Ed.2d 54 (1975); *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

beyond a reasonable doubt. *United States v. Salerno*, 481 U.S. 739, 748–50, 107 S.Ct. 2095, 2102–03, 95 L.Ed.2d 697 (1987). Because the charged person's liberty interest is at stake, however, due process requires substantive standards and procedural safeguards. *Id.* at 746, 107 S.Ct. at 2101; *see also Stack v. Boyle*, 342 U.S. 1, 6, 72 S.Ct. 1, 4, 96 L.Ed. 3 (1951) ("To infer from the fact of indictment alone a need for bail in an unusually high amount [that the person cannot meet] is an arbitrary act."). The Supreme Court has determined that the federal Bail Reform Act, 18 U.S.C. § 3142 (1994), which is based on the pretrial detention statute of the District of Columbia, satisfies constitutional due process requirements. *Salerno, supra*, 481 U.S. at 751–52, 107 S.Ct. at 2103–04.

The District of Columbia has a comprehensive statutory scheme that permits pretrial detention for certain individuals subject to express procedural safeguards. D.C.Code §§ 23–1321 to –1325 (1996). Generally, a person is entitled to remain at liberty pretrial upon that person's promise to appear for trial or execution of an unsecured appearance bond in an amount set by the trial court, "unless the judicial officer determines that the release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." D.C.Code § 23–1321(b). In the absence of that determination, the trial court must release the person under the least restrictive conditions designed to ensure the person's appearance at trial and the safety of other persons and the community. D.C.Code § 23–1321(c)(1). It is only if there is probable cause to believe that the defendant has committed certain identified serious crimes *and* the trial court determines, "by clear and convincing evidence," that no set of conditions of release will ensure appearance of the person as required or the safety of other persons and the community, that the trial court may order pretrial detention. D.C.Code § 23–1322(b); *Scott v. United*

*States*, 633 A.2d 72, 73 (D.C.1993) (citing *Lynch, supra*, 557 A.2d at 581–82).[9] The trial court's determination, however, can be made only after a hearing "pursuant to the provision of subsection (d)" of D.C.Code § 23–1322.

D.C.Code § 23–1322(d) provides in pertinent part:

(2) At the hearing, the person has the right to be represented by counsel and, if financially unable to obtain adequate representation, to have counsel appointed.

(3) The person shall be afforded an opportunity to testify. . . .

(4) The person shall be afforded an opportunity to present witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise. The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing.

The matters that the trial court must consider at the hearing are also set out in the statute:

(e) The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account information available concerning:

(1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or dangerous crime as these terms are defined in § 23–1331, or involves obstruction of justice as defined in § 22–722;

(2) The weight of the evidence against the person;

(3) The history and characteristics of the person, including:

(A) The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in

---

**9.** The statute creates a rebuttable presumption that no set of conditions will reasonably assure the safety of any other person and the community if the judicial officer finds by a "substantial probability" that the person charged has committed certain specified dangerous or violent crimes while armed or while on release pending trial, or engaged in violent attempts to obstruct justice. D.C.Code § 23–1322(c); D.C.Code § 23–1325 (first degree murder while armed). That rebuttable presumption did not arise in this case.

the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) Whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under local, state, or federal law; and

(4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release. D.C.Code § 23–1322(e).[10]

■ The precise question presented by this appeal is whether the hearing at which Tyler was ordered to be detained pretrial satisfied the requirements of D.C.Code § 23–1322(d) and (e). We conclude that it did not because Tyler was not permitted, pursuant to his proffer,[11] "to present witnesses" that would have explored the "nature and circumstances of the offense charged" and challenged the "weight of the evidence against" him, as expressly provided by the plain meaning of the statutory language. D.C.Code § 23–1322(d)(4) and (e)(1) and (2). The statute expressly provides that the trial court *"shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account information available concerning"* such matters. D.C.Code § 23–1322(e) (emphasis added). This the trial court did not do. The trial court expressed the view that it "prefer[red] ... not to know anything about the case" and ordered Tyler to be detained pretrial

based solely on the fact of the indictment and his prior criminal history.

■ We are unpersuaded by the argument that to permit the defendant to present evidence challenging the "weight of the [government's] evidence" where there has been an indictment is tantamount to challenging the indictment itself, in contravention of established case law that an indictment conclusively determines the existence of probable cause for purposes of detention. *See, e.g., Scott, supra,* 633 A.2d at 73 (citing *Gerstein v. Pugh,* 420 U.S. 103, 117 n. 19, 95 S.Ct. 854, 865 n. 19, 43 L.Ed.2d 54 (1975)). This argument misses the thrust of the statutory scheme and ignores the plain language of the statute. Here, the indictment was relied upon by the trial court as the "conclusive determination" of "probable cause" that Tyler had committed the charged offenses, the first of two requirements that must be met before a person may be detained pretrial.[12] The probable cause requirement is constitutional, for without probable cause a person may not even be bound over for trial, much less detained pretrial before his or her guilt is proven at trial. *Gerstein, supra,* 420 U.S. at 125, 95 S.Ct. at 868–69 (holding that Fourth Amendment requires "a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest").

The statute, however, imposes additional requirements, consistent with due process considerations, before a person may be deprived of liberty pretrial for an extended period of time. Once the baseline probable

---

**10.** If the trial court, after the hearing, determines by clear and convincing evidence that no set of conditions of release will assure the charged person's appearance at trial or the safety of other persons or the community, then the charged person may be detained pretrial. In such case, trial must be expedited, and be commenced within 100 days of the date the person was first detained after arrest. D.C.Code § 23–1322(h). Upon good cause shown, the trial court may allow an additional period of detention of up to 20 days. *Id.*

**11.** Tyler requested that the evidence he proffered be sealed for possible review on appeal. In light

of our disposition and Tyler's plea of guilty, we deny as moot Tyler's motion to certify the sealed documents to this court.

**12.** We do not hold that the trial judge may attach no evidentiary significance to the grand jury's finding of probable cause; the infirmity of the judge's ruling with respect to the issue of dangerousness was to make the grand jury's finding dispositive on whether Tyler committed the charged offense, without first offering him an opportunity to challenge the government's evidence.

cause determination has been made by a judicial officer or, as here, supplied by a grand jury indictment, the statute does not use the term "probable cause" at all. Rather, because much more than being held answerable for a crime at trial is at stake at a pretrial detention hearing, the statute requires "clear and convincing evidence" of the expressed standard that "no condition or combination of conditions will reasonably assure the appearance of the person as required, and the safety of any other person and the community." D.C.Code § 23–1322(b)(2); cf. Lynch, supra, 557 A.2d at 581 (requiring clear and convincing evidence of dangerousness before a person charged with first-degree murder may be detained pretrial, without a prescribed time limit).[13] The statutory scheme creates increasingly elaborate mechanisms and heightened standards as the charged person's liberty is restrained, resulting, ultimately, in pretrial detention. The statutory scheme and language make clear that the trial court's determination that there is "clear and convincing evidence" of dangerousness justifying pretrial detention is to be based on an individualized assessment of information concerning specified items that pertain to the crime charged, the history and characteristics of the person, and the danger that may be posed to others if the person is released. Here, the trial court considered Tyler's prior criminal history and the danger that his demonstrated sexual proclivities might pose to the complainant and other youngsters in the community if he were to be released. But the trial court flatly refused to consider Tyler's proffered evidence concerning the "nature and circumstances" of the charged offenses and the "weight of the evidence against" him.[14] Consideration of both was expressly required by the statute and the trial court did not have discretion to disregard them.[15] See Salerno, supra, 481 U.S. at 742, 107 S.Ct. at 2098–99.

We do not attempt to dictate to trial courts the details of how § 23–1322 hearings are to be managed. As with any other situation where the trial court is required to hold a hearing, it is within the trial court's sound discretion to determine the appropriate scope and extent of evidentiary

13. The express statutory language requiring "clear and convincing evidence" has superseded the question left open in Lynch, supra, 557 A.2d at 582 n. 4, as to whether Salerno requires clear and convincing evidence of dangerousness as a matter of due process before a person may be detained pretrial under § 23–1322(b).

14. The trial court relied on United States v. Williams, 798 F.Supp. 34, 36 (D.D.C.1992) for the proposition that Tyler could not present evidence about the indicted charges. Williams is inapposite. First, Williams dealt with the defendant's attempt to defeat a rebuttable presumption of dangerousness under the federal Bail Reform Act, 18 U.S.C. § 3142(e), in cases where there is probable cause to believe that the defendant committed a narcotics offense punishable by a maximum term of imprisonment of ten years or more. Id. at 35. The trial court refused to allow the defendant to attack the conclusiveness of the indictment as establishing probable cause for the purpose of raising the statutory rebuttable presumption, but allowed the defendant to present evidence rebutting the presumption of dangerousness. Id. at 36. The court noted, however, that "in extraordinary circumstances which are not present here the defendant may develop either extrinsic evidence or testimony that the defendant was not connected with the crime or the indictment was simply in error as it relates to him." Id. at 36 n. 1. As noted supra at note 9, the different statutory presumption that exists under District law is not at issue in this case. Second, in Williams the court did not focus on the express requirements of the statute concerning the factors that the trial court must take into account under the federal Bail Reform Act, 18 U.S.C. § 3142(g), which are essentially the same as under District of Columbia law, D.C.Code § 23–1322(e). Therefore, even though we may find persuasive a federal court's interpretation of District of Columbia or of similar federal law, we do not read Williams' statement that a defendant may not, at a pretrial detention hearing, "launch a generalized attack on the indictment" as that court's considered judgment on the statutory issue arising under District of Columbia law that we address in this case.

15. The government argues that the trial judge could decide not to hear Tyler's proffered evidence that the complainant's testimony was a fabrication as "irrelevant" because the trial court did not consider any particularities of the charged offense in evaluating Tyler's dangerousness, other than that it was supported by probable cause. That option was not available to the trial court; the statute, by its terms, defines what is relevant in evaluating dangerousness, including the "nature and circumstances" of the charged offense and the "weight of the evidence against" the charged person. D.C.Code § 23–1322(e).

presentations and cross-examination, in light of the proffer made and the trial court's assessment of the evidence developed at the hearing. Considerations of judicial efficiency caution against permitting a pretrial detention hearing to turn into a trial of the indicted offense or a means of discovery. *Cf. Gerstein, supra,* 420 U.S. at 122 n. 23, 95 S.Ct. at 867 n. 23. The clear mandate of the statute, however, does not permit the trial court either to completely forego consideration of the specific items which the statute requires be taken into account, or to prohibit the defendant from using the procedural safeguards that the statute expressly provides.[16]

On appeal from an order of detention we affirm if the order "is supported by the proceedings below. If the order is not so supported, the court may remand the case for a further hearing, or ... order the person released." D.C.Code § 23–1324(b). Because Tyler's pretrial detention hearing did not comport with statutory requirements, the trial court's detention order is not "supported" by the required proceedings. In light of Tyler's subsequent guilty plea, we do not remand the case or order Tyler's release, but vacate the detention order.

*So ordered.*

SCHWELB, Associate Judge, with whom FERREN, Associate Judge, joins, concurring:

I am pleased to join the judgment and opinion of the court. I write separately, however, to emphasize a point not addressed in Judge Ruiz' opinion, namely, that Tyler's right to present exculpatory evidence at his preventive detention hearing exists independently of the question of dangerousness[1] and is not restricted in any way to that issue.

## I.

The general procedures applicable to preventive detention hearings are set forth in D.C.Code § 23–1322(d) (1996).[2] Subsection (3) of that provision states that the defendant shall be afforded an opportunity to testify. Subsection (4) provides, *inter alia,* that he shall be afforded an opportunity to present witnesses. There is no restriction in Section 23–1322(d) with respect to the issues as to which the defendant may testify or present witnesses. I therefore discern no statutory basis for the government's position that any presentation of exculpatory evidence must be confined to the issue of dangerousness and may not go to the question of the defendant's guilt or innocence of the charged offense.

To construe the statute as the government does seems to me to fly in the face of common sense. No matter how dangerous the defendant may be, and no matter how many previous crimes he may have committed, surely he cannot be preventively detained if the most important evidence of all—proof that he probably "did it"—collapses. Suppose that Tyler could establish beyond peradventure that he was in Papua or Peru or prison when the crime was committed. It is inconceivable to me that such exculpatory evidence may be excluded. Yet the trial judge, in ordering Tyler's detention, stated that she "prefer[red] ... not to know anything about the case," and her ruling thus excluded evidence relevant to the question whether preventive detention was warranted.

In my opinion, the defendant's right to present evidence that he did not commit the charged crime is so fundamental that there should be no need invoke august canons of statutory construction. Since others appar-

---

**16.** In light of our disposition based on the trial court's failure to comply with express statutory requirements, we do not address Tyler's argument that he was entitled to the same rights as a matter of constitutional due process. *See Salerno, supra,* 481 U.S. at 746–52, 107 S.Ct. at 2101–04; *Lynch, supra,* 557 A.2d at 584–87 (Ferren, J., concurring in part and dissenting in part); *Edwards, supra,* 430 A.2d at 1333–39.

**1.** In using the word dangerousness, I include both danger to the community and danger that

the defendant may not appear in court as required.

**2.** Section 23–1322(e) sets forth the considerations applicable to the judge's determination whether there are conditions, short of preventive detention, that will reasonably assure the safety of the community and the defendant's appearance in court. I agree entirely with Judge Ruiz' discussion of this provision.

ently disagree, however, I note Chief Justice Rehnquist's apt reminder that "[i]n our society, liberty is the norm, and detention prior to trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755, 107 S.Ct. 2095, 2105, 95 L.Ed.2d 697 (1987); *see also Covington v. United States*, 698 A.2d 1033, 1037 (D.C.1997) (quoting *Salerno*). Preventive detention statutes restrict the liberty of the citizen, and they must be strictly construed to ensure that defendants are not detained without bond "unless the lawmaker has clearly said that they should [be]." *United States v. Bass*, 404 U.S. 336, 348, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1971) (citations omitted). Section 23–1322(d) contains no provision clearly precluding the defendant from presenting the type of exculpatory evidence that the trial judge excluded, and the government's position is contrary to the principle enunciated in *Bass*.

Moreover, statutes should be construed, if reasonably possible, to avoid any doubt as to their constitutionality. *Umana v. Swidler & Berlin, Chartered*, 669 A.2d 717, 723–24 (D.C. 1995). "[A]s between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, our plain duty is to adopt that one which will save the act. Even to avoid a serious doubt the rule is the same." *NLRB v. Jones & Laughlin Corp.*, 301 U.S. 1, 30, 57 S.Ct. 615, 621, 81 L.Ed. 893 (1937) (citations omitted). An interpretation of Section 23–1322(d)(3) and (4) which would restrict the defendant from presenting evidence that he did not commit the offense would, at the very least, raise serious constitutional questions, and we should therefore reject such a construction.

The government contends that, because the grand jury found probable cause that Tyler committed the charged offense, the preventive detention hearing should not concern itself with evidence that the defendant did not "do it." Like the court, I disagree. Tyler had no opportunity to be heard before the grand jury. The finding of probable cause was made following a non-adversarial proceeding in which the defendant could not present exculpatory evidence. Such a determination cannot control the disposition of an adversarial hearing in which the defendant

has a right to testify and call witnesses and in which his fundamental liberty interests are directly at stake.

If a defendant who did not commit the crime is preventively detained, a subsequent finding that he is innocent cannot give him back the time spent in detention. He must therefore be given the opportunity to show his innocence before a detention order is entered.

## II.

Judge King and the judges who join him make a persuasive case for the proposition that the precise situation here presented does not arise frequently. I do not think that it follows from that showing, however, that the appeal should be dismissed as moot. In my view, the position taken by the government and adopted by the trial judge has implications that go well beyond these particular facts. The trial judge's order in this case, affirmed by a divided panel of this court, was contrary to the basic principle that no defendant may be preventively detained without first being given the opportunity to try to show that he did not commit the crime with which he has been charged. If we were to dismiss the appeal as moot, the government's position—a fallacious one, in my view—would remain viable, and the government could invoke it again in the future.

In most circumstances, we should decide no more than we have to decide. As Judge Ruiz points out, however, preventive detention cases such as this one necessarily move fast, and they tend to evade review. An appellate court can rarely decide a preventive detention issue while the controversy is still live. I therefore agree with Judge Ruiz that, in the exercise of our discretion, we should decide the merits of the case rather than dismissing Tyler's appeal.

I am reinforced in that view by the fact that we voted some time ago to go en banc, and that we have now proceeded to consider the contentions of the parties on the merits (as well as with respect to mootness). Both sides are represented by excellent counsel. Notwithstanding Tyler's guilty plea, the Public Defender Service has every incentive to argue vigorously on behalf of his initial position. The government has fought hard as well.

The argument that we should not decide this case on the merits was in its most persuasive posture prior to our vote on the petition for rehearing en banc. Even at that time, a majority of the court voted to grant the petition. Now that the case has proceeded to this point, I think it would be incongruous to step backwards and decline to rule on the substantive issue. I agree with Chief Justice Rehnquist that "once this court has undertaken a consideration of a case, an exception to [the mootness] principle is warranted." *Honig v. Doe,* 484 U.S. 305, 332, 108 S.Ct. 592, 609, 98 L.Ed.2d 686 (1988) (concurring opinion); *accord, In re Melton,* 597 A.2d 892, 908 n. 32 (D.C.1991) (en banc). This is especially true where, as here, the court has had the benefit of a first-rate adversarial presentation.

If we carry the doctrine of mootness too far in this particular area, then effective review of orders curtailing fundamental liberty interests will be irretrievably impaired. I therefore join the court in rejecting the government's position that we should dismiss the appeal as moot.

KING, Associate Judge, with whom Associate Judges TERRY and STEADMAN join, dissenting:

In this appeal of an order of detention pursuant to D.C.Code § 23–1322(b) (1997

Supp.), the en banc court has decided to reverse a decision of a motions panel that became moot three days after that decision was issued when the defendant entered a guilty plea and was thereafter detained pursuant to a different statutory provision. The en banc court has chosen this course even though the decision it reverses was an unpublished judgment with no precedential value beyond this case.[1] Moreover, because the judgment was decided on cross-motions for summary affirmance/reversal, the language contained in the judgment is so cryptic and uninformative that one is hard pressed to discern exactly what rule of law, if any, was laid down.[2]

Finally, as I have said, the defendant entered a plea of guilty three days after the judgment was entered by the division. Once the defendant pled guilty he was detained pursuant to D.C.Code § 23–1325(b) (1996 Repl.). Therefore the order of detention pursuant to § 23–1322(b), which was the order affirmed by the motions division, was no longer in effect.

It is essentially undisputed that this matter would be moot in the federal courts because there is no reasonable expectation that this defendant will be subjected to the same action again. *See Murphy v. Hunt,* 455 U.S.

---

1. See Rule IX D District of Columbia Court of Appeals Internal Operating Procedures; D.C. Ct. App R. 28(h); *In re Pearson,* 628 A.2d 94, 98 n. 8 (D.C.1993) ("unpublished decision ... cannot be invoked as precedent"); *Scott v. District of Columbia,* 493 A.2d 319, 322 n. 5 (D.C.1985) ("unpublished decisions may not be cited to the [trial] court by counsel"); *see also Angarano v. United States,* 329 A.2d 453, 456 (D.C.1974) (en banc) ("perfunctory ruling on the motion ... could not and *did not* bind future divisions which might be asked to decide similar motions.")

2. The division's order on this point stated:
 This matter came before the court for oral argument on appellant's motion for summary reversal and appellee's motion for summary affirmance. The court concludes that the court sufficiently considered "the weight of the evidence against the [defendant]," D.C.Code § 23–1322(e)(2) (1994 Supp.), when it took into account the existence of the indictment, which conclusively established probable cause. The court further concludes that in seeking to contest the strength of the government's case, appellant is attempting to do indirectly what

he is barred from doing directly, namely, to challenge the evidence supporting the indictment. *Scott v. United States,* 633 A.2d 72, 73 (D.C.1993); *see Lawn v. United States* 355 U.S. 339, 349 [78 S.Ct. 311, 317–18, 2 L.Ed.2d 321] (1958); *Costello v. United States,* 350 U.S. 359, 363 [76 S.Ct. 406, 408–09, 100 L.Ed. 397] (1956); *Coppedge v. United States,* 114 U.S.App.D.C. 79, 82–83, 311 F.2d 128, 131–132 (1962); *United States v. Williams,* 798 F.Supp. 34 (D.D.C.1992). It is therefore
 ORDERED that appellant's motion for summary reversal is denied. It is
 FURTHER ORDERED that appellee's motion for summary affirmance is granted because the order of the trial court is "supported by the proceedings below." D.C.Code § 23–1324(b) (1989); *see Ireland v. United States,* 406 A.2d 1259, 1260 (D.C.1979). It is
 FURTHER ORDERED and ADJUDGED that the order on appeal be, and it hereby is, AFFIRMED. * * *
 *Tyler v. United States,* No. 95–CO–183 (D.C. filed May 5, 1995).

478, 482, 102 S.Ct. 1181, 1183–84, 71 L.Ed.2d 353 (1982). Although we are not bound by federal mootness precedent, we do not generally stray from the course set out by those authorities unless there is a compelling reason to do so. For example, although we have previously addressed the question of mootness in a number of appeals of pretrial detention orders where the defendant had either pleaded guilty or been found guilty during the pendency of the appeal, we have exercised our discretion "to reach the merits of a seemingly moot controversy", *McClain v. United States,* 601 A.2d 80, 82 (D.C.1992) (citation omitted), on only two occasions.

In both "seemingly moot" cases where we reached the merits we decided an important issue that affected every future pretrial detention case under the applicable statute. For example, in *United States v. Edwards,* 430 A.2d 1321 (D.C.1981) (en banc), *cert. denied,* 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982), we decided the constitutionality of pretrial detention pursuant to D.C.Code § 23–1322(a)(1) (1973), the predecessor provision of the one under which appellant here was originally detained. And in *Lynch v. United States,* 557 A.2d 580 (D.C. 1989) (en banc), we were called upon to decide what burden of proof applied to the dangerousness determination for pretrial detention pursuant to D.C.Code § 23–1325(a) (1988 Supp.), for persons charged with first degree murder. In short, we exercised our discretion and reached the merits in those cases because our decision affected every pretrial detention case that would arise in the future under the respective detention provisions. As we said in *McClain, supra,* where we declined to decide the underlying issue under circumstances affecting only a small number of cases, we reached the merits in *Edwards* and *Lynch* because both cases "involved overarching issues important to the resolution of an entire class of future deten-

tions. The same cannot be said in this case." *Id.* at 82. It also cannot be said in the case before the court here.

With respect, the chance of recurrence of the events presented here is slim. First, these circumstances arise only where detention is sought pursuant to § 23–1322(b).[3] Second, the identical events would recur only in those infrequent cases where an indictment is issued before the detention hearing. Moreover, the circumstances would repeat only in those even rarer instances where a defendant's criminal record is so extensive that the trial court will be able to determine dangerousness without any consideration of the facts of the pending charges. In its brief before the en banc court, the government informs that it was aware of only two other such instances and in neither case did the defendant seek to present additional evidence.[4] Further, so far as can be determined, the precise circumstances of this case have never been before either this court or the trial court, and appellant does not claim otherwise. In sum, this case has become moot by virtue of appellant's plea of guilty and there is little likelihood that the same circumstances will recur. Therefore we should exercise our discretion by declining to decide the merits of a dispute which presents a very close and difficult question which need not, for the reasons stated, be decided either en banc or by any division of the court.

---

3. For detention pursuant to § 23–1325(a), the court must find there is a substantial probability the defendant committed the charged offense. Therefore, the circumstances present in this case could not arise for determination pursuant to that section.

4. Statistical data provided by the Pretrial Services Agency shows that detention pursuant to

§ 23–1322(b) was ordered in 1,410 cases in calendar year 1996. If the government is correct in its estimate of only two other cases where the circumstances here were nearly duplicated, the number of such instances would occur in less than 0.2% of the cases where pretrial detention pursuant to § 23–1322(b) is sought.