*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 21-CO-282

VERNON J. AUTREY, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(1997-FEL-9413)

(Hon. Robert A. Salerno, Trial Judge)

(Argued November 19, 2021                    Decided December 14, 2021)

*Anne Keith Walton* for appellant.

*Paul Maneri*, Public Defender Service, with whom *Samia Fam* and *Alice Wang*, Public Defender Service, filed an *amicus curiae* brief for appellant.

*Eric Hansford*, with whom *Channing D. Phillips*, Acting United States Attorney, and *Chrisellen R. Kolb*, *John P. Mannarino*, and *Mark Hobel*, Assistant United States Attorneys, filed a Cross-Motion for Summary Affirmance, for appellee.

Before GLICKMAN and DEAHL, *Associate Judges*, and NEBEKER, *Senior Judge*.

DEAHL, *Associate Judge*: Appellant Vernon Autrey appeals the trial court's

denial of his motion for compassionate release. *See* D.C. Code § 24-403.04; D.C.

Law 23-274, tit. XII, § 1203(b) (Apr. 27, 2021). Autrey, who is serving a sentence of twenty years to life for a non-fatal shooting in 1997, sought compassionate release on the ground that he satisfies the statute's two core requirements: that he is both eligible and non-dangerous. D.C. Code § 24-403.04(a). More specifically, as concerns his eligibility, he argued that his age (45) and medical conditions (obesity, diabetes, hyperlipidemia, hypertension, and asthma) rendered him acutely vulnerable to severe illness or death from COVID-19 and thus constitute "[o]ther extraordinary and compelling reasons" for a modified prison term under the statute's catch-all provision. D.C. Code § 24-403.04(a)(3). The United States countered that Autrey is ineligible for compassionate release because he received two doses of the Pfizer-BioNTech vaccine, which it maintains substantially mitigates his risk of severe illness or death from COVID-19 notwithstanding his medical conditions.

The trial court agreed with the United States and denied Autrey's motion, concluding that he is ineligible for compassionate release without addressing his dangerousness. Autrey appealed and moved for summary reversal, arguing that vaccination status is irrelevant to eligibility for compassionate release under the statute. In his view, his age and medical conditions place him at "high risk" for severe illness from COVID-19 regardless of his vaccination status. He maintains that "[i]t is the fact that the medical conditions exist—not the fact that they might be

mitigated by something else like the vaccine or medication or some other type of medical care—that determines 'extraordinary and compelling reasons' for release." The Public Defender Service for the District of Columbia filed an amicus brief in support of Autrey's motion. It elaborated that the "history and purpose of the [compassionate release] statute" show that "the D.C. Council has made clear that the only question for the trial court is whether Mr. Autrey's medical conditions make his risk of severe illness from COVID-19 higher than those who do not suffer from such medical conditions," so that his vaccination status is irrelevant.

Shortly after Autrey moved for summary reversal on those grounds, this court decided *Page v. United States*, 254 A.3d 1129 (D.C. 2021). *Page* concerned a prisoner who had already been infected with COVID-19, and we held that the trial court could properly take the fact of a prior infection into account as diminishing his "risk of severe illness or death from COVID-19." *Id.* at 1130. *Page* concluded, over dissent, that the Council "intended for trial courts to exercise 'appropriate discretion to review the compelling facts of a case,' . . . and thus afforded them discretion to consider any reasonable factor that directly impacts on the determination of whether an applicant is 'at risk of severe illness or death from COVID-19.'" *Id.* (quoting Report on Bill No. 23-127 before the Comm. on the Judiciary & Pub. Safety, Council of the District of Columbia, at 28-29 (Nov. 23, 2020)).

At Autrey's request, we then held this appeal in abeyance pending resolution of various petitions for en banc review, asking for reconsideration of the issue decided in *Page* and its apparent implications for those who are vaccinated. When those petitions were denied, we scheduled this matter for oral argument. At argument, in light of *Page*, Autrey and amicus retreated from their initial positions that receipt of a vaccine has no bearing on whether a prisoner has shown "extraordinary and compelling reasons" for compassionate release based on medical conditions that increase the prisoner's risk of severe illness or death from COVID-19. They now urge us to hold that the mere fact of vaccination is not, standing alone, fatal to a prisoner's claim that he is eligible for compassionate release.

We agree, and so it seems does the United States. Following *Page*'s lead, we hold that a prisoner's vaccination status is a relevant and permissible consideration in determining whether a prisoner is "at risk of severe illness or death from COVID-19." *Page*, 254 A.3d at 1130. But it is not the end all, be all of that inquiry, which requires a fact-specific analysis of the prisoner's condition(s) and the evolving scientific evidence regarding how effective vaccination is likely to be in the particular case. We now elaborate on *Page*'s conclusion that the Council intended for the catch-all to afford trial courts the "discretion to review the compelling facts

of a case" rather than bind them with rigid criteria amid an unprecedented and often unpredictable pandemic. *Id.*

The compassionate release statute lists six examples of "extraordinary and compelling reasons" for relief: two primary examples and four "other" illustrative examples in a catch-all provision. D.C. Code § 24-403.04(a)(1)-(3). Although first enacted as emergency legislation at the pandemic's onset,[1] the statute mentions COVID-19 as a basis for eligibility in only the catch-all's "elderly age" example. D.C. Code § 24-403.04(a)(3)(B). In addition to age and time served, the "elderly age" example seemingly limits relief to a prisoner who "[s]uffers from a chronic or serious medical condition related to the aging process or that causes an acute vulnerability to severe medical complications or death as a result of COVID-19[.]" D.C. Code § 24-403.04(a)(3)(B)(iii). The statute does not define the operative terms "serious medical condition," "acute vulnerability," or "severe medical complications."

---

[1]    "COVID-19 Response Supplemental Emergency Amendment Act of 2020," D.C. Act 23-286 § 305(b), 67 D.C. Reg. 4178 (Apr. 10, 2020); *see also* D.C. Council, Twenty-Seventh Legislative Meeting at 47:17 to 48:26 (Apr. 7, 2020) (statement by Councilmember Charles Allen introducing the emergency legislation), *video available* at https://lims.dccouncil.us/Legislation/B23-0733; https://perma.cc/RTD7-TRMY.

In passing permanent legislation eight months later, the Council reduced the "elderly age" example's time-served requirement, but it did not amend the statute with different or additional examples warranting relief based on COVID-19.[2] While the FDA had already approved Pfizer's vaccine for emergency use,[3] the Council was aware that the District's judges had been extending the catch-all to prisoners whose "circumstances increase their vulnerability to death or severe illness from COVID-19, for example, even if they do not meet the definition of 'elderly' based on their age or length of imprisonment[.]"[4] The Council's decisions to (1) keep the number of enumerated examples limited, (2) retain a non-exhaustive catch-all provision, (3) leave operative terms undefined, and (4) express approval of trial court judges extending the catch-all beyond the "elderly age" criteria despite the imminent availability of vaccines, collectively reinforce the conclusion that the Council intended for the catch-all's "[o]ther extraordinary and compelling reasons" standard

---

[2] *See* D.C. Law 23-274, tit. XII, § 1203(b). Although the Council passed D.C. Law 23-274 on December 15, 2020, and the Mayor signed it on January 13, 2021, it did not become effective until April 27, 2021, following the Congressional review period. *See* D.C. Code § 1-206.02(c)(2) (2016 Repl.).

[3] *See FDA News Release*, https://www.fda.gov/news-events/press-announcements/fda-takes-key-action-fight-against-covid-19-issuing-emergency-use-authorization-first-covid-19; https://perma.cc/J5WF-CJ4B (Dec. 11, 2020).

[4] Report on Bill 23-127 at 27-28.

to remain flexible in the face of changing circumstances and evolving scientific knowledge.[5]

The past several months have shown the need for such flexibility and underscored how hard-and-fast rules in this area can quickly become outdated. When we decided *Page* in July 2021, infections and deaths attributable to COVID-19 were near a pandemic-low in the United States: specifically, deaths hovered around 300 per day and new detected infections were around 30,000 per day. *See Reported Cases & Deaths by Country: United States*, WORLDOMETER, www.worldometers.info/coronavirus/country/us/; https://perma.cc/6Q9G-4ZK3. At the time, there was considerable cause for optimism about the effectiveness of vaccines and the prospects for substantially containing COVID-19's spread and reducing mortality rates, leading one court to declare (just one day before we issued *Page*) that "the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release"

---

[5] *See Grayson v. AT&T Corp.*, 15 A.3d 219, 238 (D.C. 2011) (en banc) ("Statutory interpretation is a holistic endeavor, and, at a minimum, must account for a statute's full text, language as well as punctuation, structure, and subject matter.") (quoting *Cook v. Edgewood Mgmt. Corp.*, 825 A.2d 939, 946 (D.C. 2003)); *Facebook, Inc. v. Wint*, 199 A.3d 625, 628 (D.C. 2019) ("We may also look to the legislative history to ensure that our interpretation is consistent with legislative intent.") (quoting *Thomas v. Buckley*, 176 A.3d 1277, 1281 (D.C. 2017)).

for those able to receive and benefit from it.  *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) (Easterbrook, J.); *see also United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) (endorsing *Broadfield*).

Things have changed quite a bit over the past several months, making that proclamation seem rather premature.  Within weeks of *Broadfield*'s sweeping declaration, COVID-19's so-called Delta variant rampaged through the nation, and by mid-September daily new cases and deaths had increased nearly tenfold from their summer nadir, substantially dampening any optimism.  WORLDOMETER, *supra* And in recent weeks, yet another variant, Omicron, has emerged surrounded by question marks regarding its transmissibility, severity, and how effectively current vaccinations guard against it, with few readily available answers.[6]  Just days ago, President Biden urged all already-vaccinated Americans "who have not yet gotten their booster shot" to "get one as soon as possible," emphasizing the Omicron variant

---

[6] There is some early evidence that Omicron is more transmissible than previous strains but less likely to lead to hospitalization or death.  Lynsey Chutel, et al., *Early Reports Signal Variant Is Less Severe*, NY TIMES, Dec. 7, 2021, at A1 ("[T]here are early indications that Omicron may cause less serious illness than other forms of the virus.").  It is too early to predict if that early evidence will bear out.

as particular cause for urgency.[7]  Those developments highlight the need for courts to be flexible in responding to the ever-changing realities on the ground.

That flexibility requires trial courts to consider "any reasonable factor[,]" not just vaccination, in determining whether a prisoner has shown "an 'extraordinary and compelling' reason warranting a sentence modification."  *Page*, 254 A.3d at 1130.  Those factors include, at least to the extent any litigant introduces it, evidence regarding (1) whether a prisoner is unable to benefit from a vaccine due to being

---

[7] Press release, President Biden Announces New Actions to Protect Americans Against the Delta and Omicron Variants as We Battle COVID-19 this Winter (Dec. 2, 2021) www.whitehouse.gov/briefing-room/statements-releases/2021/12/02/fact-sheet-president-biden-announces-new-actions-to-protect-americans-against-the-delta-and-omicron-variants-as-we-battle-covid-19-this-winter/; https://perma.cc/8Q3K-ZHJA.  That announcement came on the heels of the CDC's recommendation that all already-vaccinated adults receive booster shots. Media Statement, CDC Expands COVID-19 Booster Recommendations (Nov. 29, 2021) www.cdc.gov/media/releases/2021/s1129-booster-recommendations.html; https://perma.cc/3MSA-L8L9.  The CDC had previously recommended a Pfizer booster shot six months after the second dose for adults aged 18-49 with underlying medical conditions and adults aged 18-64 years who are at increased risk of COVID-19 exposure and transmission because of their institutional setting, both of which would appear to apply to Autrey.  *See* Press Release, CDC Statement on ACIP Booster Recommendations (Sept. 24, 2021) https://www.cdc.gov/media/releases/2021/p0924-booster-recommendations-.html; https://perma.cc/SDB7-GM6T Federal Bureau of Prisons, *COVID-19 Vaccine Guidance* at 5-6 (Oct. 13, 2021, version 14.1) https://www.bop.gov/resources/pdfs/covid_19_vaccine_guidance_v14_0_2021. pdf; https://perma.cc/9KP4-GA2Y. The parties have not indicated whether Autrey has received a booster shot during the pendency of this appeal.

immunocompromised, (2) whether a prisoner's medical conditions continue to render him acutely vulnerable to severe illness or death despite receiving some benefit from the vaccine, which may implicate vaccine efficacy data for certain subpopulations, (3) emerging research about "long COVID," (4) the availability of booster shots to the extent they are necessary to prevent severe illness or death due to waning immunity, and (5) the rise of new virus variants to the extent they impair the efficacy of the existing vaccines in preventing severe illness or death. In short, trial courts must continue to "act[] independently with appropriate discretion to review the compelling facts of a case[.]" Report on Bill No. 23-127 at 28-29. Given how rapidly the above eligibility calculus can change, it would also be prudent for trial courts in each compassionate release case to decide whether the prisoner has demonstrated their non-dangerousness, regardless of any eligibility determination.[8]

---

[8] We acknowledge this runs counter to the ordinary guideline that courts "should decide no more than we have to decide." *Tyler v. United States*, 705 A.2d 270, 279 (D.C. 1997) (Schwelb, J., concurring). In this context, there is good reason to depart from that judicial policy. Trial court determinations on a prisoner's dangerousness will help expedite the resolution of compassionate release motions that are almost invariably appealed because the factors informing eligibility can change drastically by the time of appellate consideration. To illustrate the point, Autrey, amicus, and the United States have asked us to consider new scientific data that has emerged since the trial court's ruling in this case, which we discuss further below.

That is not to say that a prisoner's receipt of a vaccine is just another factor of undifferentiated significance. The United States points us to CDC statistics which show vaccination reduces one's risk of hospitalization or death from COVID-19 many times over.[9] For example, at the July 2021 ebb before the spread of the Delta variant, unvaccinated persons in Autrey's age group were hospitalized at eight times the rate of vaccinated persons, although that disparity fell to a factor of six by the height of the Delta wave in September 2021.[10] Similarly, unvaccinated persons in Autrey's age group died at twenty-seven times and thirty-four times, respectively, the rate of vaccinated persons.[11] Even the study that Autrey and amicus highlight detailing the Delta outbreak at a Bureau of Prisons facility corroborates these wide disparities: unvaccinated prisoners were hospitalized at thirteen times the rate of

---

[9] *See* CDC, *Rates of COVID-19 Cases and Deaths by Vaccination Status*, https://covid.cdc.gov/covid-data-tracker/#rates-by-vaccine-status; https://perma.cc/7YY5-A44K (last accessed Dec. 6, 2021); CDC, *Rates of Laboratory-Confirmed COVID-19 Hospitalizations by Vaccination Status*, https://covid.cdc.gov/covid-data-tracker/#covidnet-hospitalizations-vaccination; https://perma.cc/FU49-52F8 (last accessed Dec. 6, 2021).

[10] *See id.* (showing hospitalization rates per 100,000 persons in the 30-49 age group to be 12.78 versus 102.35 for the week ending July 3, 2021, and 4.0 versus 58.8 for the week ending September 11, 2021).

[11] *See Rates of COVID-19 Cases and Deaths by Vaccination Status*, n.19 *supra* (showing death rates per 100,000 persons in the 30-49 age group to be 0.02 versus 0.54 for the week ending July 3, 2021, and 0.12 versus 4.13 for the week ending September 11, 2021).

vaccinated prisoners (3 of 42 versus 1 of 185), and the sole prisoner who died was unvaccinated.[12] The vaccines have generally, at least to date, proven extremely effective at preventing severe illness or death.

We also do not mean to suggest that unsubstantiated claims of a vaccinated prisoner's residual risk of severe illness or death from COVID-19 can constitute "[o]ther extraordinary and compelling reasons" for compassionate release. All persons—vaccinated or not, incarcerated or not, with or without underlying medical conditions—are at some risk of severe illness or death from COVID-19; such is our plight. A vaccinated prisoner must show that he remains "acutely vulnerable" to those outcomes despite being vaccinated, and he must do so by a preponderance of the evidence. *See Bailey v. United States*, 251 A.3d 724, 729-30 (D.C. 2021) (adopting preponderance standard as to dangerousness inquiry). While conclusive statistical evidence is not needed to satisfy the preponderance standard, a prisoner cannot rely on the mere possibility of residual risks without evidence that those risks actually exist, apply to the prisoner, and rise to the level of an acute vulnerability.

---

[12] *See* Liesl M. Hagan, MPH et al., *Outbreak of SARS-CoV-2 B.1.617.2 (Delta) Variant Infections Among Incarcerated Persons in a Federal Prison — Texas, July–August 2021* (Sept. 24, 2021), https:// www.cdc.gov/mmwr/volumes/ 70/wr/mm7038e3.htm; https://perma.cc/E2P2-PHUV.

Expert opinions may well be necessary. But it is the prisoner's burden to demonstrate some acute vulnerability to severe illness or death from COVID-19 despite being vaccinated, not the government's burden to disprove it, and not the trial court's obligation to independently research the matter.[13]

Applying the above principles to this appeal, we perceive no abuse of discretion in the trial court's conclusion that Autrey failed to show the "extraordinary and compelling reasons" required for compassionate release. While Autrey has a host of comorbidities generally increasing his risk of severe illness or death from COVID-19, the government countered with evidence that his vaccination substantially mitigates his risk, and Autrey presented no evidence to the contrary. The trial court was well within its discretion in concluding that Autrey had not carried his burden of establishing his eligibility for compassionate release.[14]

---

[13] We do not hazard a precise definition of "acute vulnerability" here, as no party has asked us to do that. Suffice to say it requires more than an "above-average" risk, as compared to the general population, associated with severe illness or death from COVID-19. *Webster's Third New International Dictionary Unabridged* 23 (2020) (defining "acute" as "serious, urgent, and demanding attention; intensified or aggravated nearly to a crisis, culmination, or breaking point: extreme, severe, critical"); *see also* Report on Bill No. 23-127 at 27-28 (approving of trial judges dispensing with the age and time-served requirements of the "elderly age" example, not the acute-vulnerability requirement).

[14] Autrey argues that the trial court erred by failing to apply the preponderance-of-the-evidence standard to its eligibility determination. We

However, we further note that there is no prohibition on successive motions for compassionate release,[15] and given the ever-changing factual and scientific underpinnings of such motions, any one judgment is likely to have little if any preclusive effect on the next. Should Autrey amass some evidence that the vaccine is ineffective as to him, or more generally ineffective as to emerging variants, he may yet prevail on a new motion for compassionate release based on such evidence.

\*     \*     \*

The Superior Court's order is affirmed.

---

disagree. While the trial court did not expressly invoke a preponderance standard, and its order was issued before our decision in *Bailey* clarifying that as the applicable standard, the trial court order does not employ the sort of language inconsistent with the preponderance standard that caused us to remand in *Bailey* for a clarified ruling. 251 A.3d at 730-31; *see also S. Hills P'ship v. Anderson*, 179 A.3d 297, 299 (D.C. 2018) ("The appellant bears the burden of 'convincing the appellate court that the trial court erred.'") (quoting *Harvey v. United States*, 385 A.2d 36, 37 (D.C. 1978)).

[15] *See* D.C. Code § 24-403.04 (containing no prohibition on successive motions). It appears that federal district courts have uniformly reached the same conclusion with respect to the analogous federal statute. *See*, *e.g.*, *United States v. Istre*, No. 09-341, 2021 U.S. Dist. LEXIS 84971, at \*2-3 (E.D. La. May 4, 2021) (citing cases); *United States v. Mendoza*, No. 10-313(1) (DWF/FLN), 2019 U.S. Dist. LEXIS 205366, at \*11 (D. Minn. Nov. 26, 2019) ("Indeed, such a prohibition would not make sense for petitions for compassionate release, which is appropriate in a range of circumstances that may arise even after a court has previously found that compassionate release was inappropriate.").